**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | |
|---|---|
| LMMC, LLC,<br><br>    Plaintiff,<br><br> v.<br><br>CALCIUM LLC,<br><br>    Defendant. | Case No.: 1:23-cv-00950 |

## <u>COMPLAINT FOR DAMAGES</u>

Plaintiff LMMC, LLC ("LMMC" or "Client"), by and through its attorneys and for its cause of action against Calcium LLC ("Defendant" or "Calcium"), states and alleges:

### PARTIES

1. Plaintiff LMMC is a Nebraska limited liability corporation maintaining its principal place of business at 601 North 108th Court, Omaha, Nebraska.

2. LMMC is a citizen of Nebraska for purposes of 28 U.S.C. § 1332(a)(1). LMMC is a single member limited liability company whose sole member is a citizen of Nebraska and domiciled therein.

3. Defendant Calcium is a Delaware limited liability corporation with its principal place of business at 500 West Madison, Chicago, Illinois.

4. Defendant is not a citizen of Nebraska for purposes of 28 U.S.C. § 1332(a)(1). Upon information and belief, no member of Defendant is a citizen of the State of Nebraska.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because this lawsuit is between citizens of different States and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.      This Court has personal jurisdiction over Defendant because Defendant resides in this district.

7.      Venue is proper in this Court because Defendant resides in this District and because the agreement in question designates venue in the City of Chicago.

## GENERAL ALLEGATIONS

### I. The Agreement

8.      LMMC is in the business of operating health care clinics in the Midwest.

9.      In 2022, LMMC entered into discussions with Defendant for procurement of an online platform for communicating with patients.  LMMC made clear at the outset that the platform must be HIPAA compliant, compatible with LMMC's existing information technology infrastructure, and be compatible with common health care industry information platforms like eCW.

10.     Defendant held itself out as a competent and experienced software solution provider with particular experience in the healthcare industry.

11.      Defendant represented, promised and assured LMMC that Defendant's Calcium Platform software suite was specifically designed for health care providers, fully compatible with common health care industry information platforms like eCW, and would integrate seamlessly with LMMC's existing information management system.

12.     Relying upon Defendant's representations, LMMC elected to purchase a license to use the Calcium Platform software suite and related services from Defendant ("Solution").

13.     LMMC and Defendant (the "Parties") thereafter executed the "SaaS Order Form – Provider Solution," with Exhibit A attached thereto, dated June 30, 2022 (hereinafter "Agreement").  *See* <u>Exhibit 1</u> attached hereto.

14.     Pursuant to the terms of the Agreement, Defendants promised to provide to LMMC "Services," described as "access to the Calcium's [sic] main mobile applications and web-based software solution (the 'Solution')," which was to "include[] the following products":

      a.    "Calcium Core:  Our primary platform that will allow you to manage your members, admins, and groups within your organization/practice.  You can invite members to your pathways and monitor their progress."

      b.    "Calcium Studio:  Calcium's robust pathway creator and editor that will allow you to customize content for your company to engage your users."

      c.    "Calcium App:  Our user-facing application (available via the Apple APP store, Google Play store and online) that will allow you to deliver your pathways to your users."

      d.    "Third Party Data available with Calcium:  Calcium will connect directly with third-party applications to access additional data details to further support the customers use case"

Agreement at page 2.

15.     Defendant Calcium "hereby grant[ed] Client, for the term of this Agreement, a non-exclusive, non-transferable, non-sublicensable right to access and use the applicable Solution in accordance with the terms and conditions of this Agreement."  Agreement Exhibit A.

16.     Defendant promised and warranted to LMMC that Defendant's "Solution" would perform as represented: "CALCIUM REPRESENTS AND WARRANTS THAT THE SOLUTION AND THE UNDERLYING SOFTWARE SHALL OPERATE IN ALL MATERIAL RESPECTS WITH ANY APPLICABLE DOCUMENTATION AND ALL SERVICES SHALL BE PERFORMED IN A PROFESSIONAL AND WORKMANLIKE MANNER."  Agreement Exhibit A.

17.     In exchange for use of the Solution, LMMC agreed to pay Defendant various fees, including a fee for the "Main Solution" and a "Setup Fee."  Agreement at page 1.  In July of 2022, LMMC prepaid three invoices for the Solution and Services in the amount of $40,000, $10,000 and $47,466.67, respectively.

18.     To date, LMMC has paid Defendant $97,466.67 ostensibly for use of the Solution and Services related to the Solution.  However, as described below, Defendant has failed to deliver the promised Solution and Services and LMMC has received no benefit from the Solution or Services.

## II.  Defendant's Failure to Perform

19.     In July 2022, just after the Agreement was executed, LMMC began working in good faith with the assigned Calcium team to prepare for the launch of the "Solution," in partnership with LMMC's electronic medical records vendor, Ero Health ("ERO").  But the Calcium team was unable to provide virtually any of the technical capabilities required for the Solution.

20.     In short, the Solution delivered by Defendant did not work.  The Solution was not compatible with common health care industry information systems and was not compatible with LMMC's information management system.

21.     Specifically, LMMC encountered the following material issues associated with the Calcium Services:

      a.  ERO (on behalf of LMMC) and Calcium were unable to send HL7 messages starting October 18, 2022.  ERO sent a message to Calcium on October 18 clarifying the relevant IP number but on October 24 was still not able to send

messages.  As late as November 8, ERO was still showing the Calcium side as down.

b. Hearing no response, on November 10, 2022, ERO asked again if Calcium could look at the email from November 8.  Calcium finally responded with a different listener IP for ERO, which was not an effective solution.

c. On November 15, Calcium was still not seeing anything from ERO, and ERO noted that the interface was still not working.  This conversation continued consistently for the next two days with ERO acting on behalf of LMMC.  Calcium failed to provide direction or let LMMC know if the issue was resolved.  Finally, on November 17, Calcium indicated that they continued to see errors.  Calcium continued to send MDM messages, despite the fact that LMMC uses ADT messaging.

d. Once information was submitted with test patient information, Calcium inexplicably declined to use any system other than one that resulted in connecting duplicates with emails and phone numbers.  ERO and LMMC repeatedly requested that Calcium use account number and date of birth confirming information in order to avoid duplicate patient identifiers.

e. Calcium originally requested prescription information to come across the interface as an RDS message, which ERO stated would take some research and work on their side to accomplish.  LMMC relied on Calcium's representation and agreed to move forward accordingly.   Several days following its initial request, Calcium sent a contradictory message that ERO should send the prescription information in an SIU.  ERO was already putting scope of work documents

together for LMMC and had to restart the process with the change request from Calcium. ERO requested that LMMC remain on the same path with the RDS message, as Calcium originally stated. When LMMC communicated this requirement to Calcium, it received no response from Calcium.

22. During the period Defendant was attempting to implement its Solution, LMMC identified numerous other problems, including duplication of records and messages, inability to include prescription information, and HIPAA privacy concerns.

23. Furthermore, during the period Defendant was attempting to get its Solution to work, Defendant made a number of alarming suggestions to LMMC which called into question the suitability of the Solution for use by a health care provider. For example, Defendant suggested a "work around" that would have LMMC manipulate and filter patient data by telephone numbers or email addresses, rather than discrete individual patient identification numbers. LMMC informed Defendant that its proposed "work around" was impossible since LMMC was at all times required to track patient data by discrete patient identification numbers to ensure patient privacy and patient safety, since patients in the same household often share telephone numbers or email addresses.

24. Despite repeated attempts to resolve the issues, Defendant was unable to resolve the problems or get its Solution to provide the functionality promised, and despite ample opportunity to cure, Defendant has failed to perform by failing to provide the Solution or Services promised in a professional and workmanlike manner.

25. On the contrary, Calcium has shown at every turn a complete lack of understanding of the Services that it promised to provide LMMC. Defendant plainly lacks the

technical ability to provide the Solution it promised and knew that it lacked the experience or ability to deliver the Solution and Services at the time it made such representations to LMMC.

26.     Furthermore, based on Defendant's apparent lack of technical ability necessary to perform the Services required in the Agreement or deliver a working Solution, it became apparent to LMMC that Defendant knew that the representations and warranties made by Defendant were false.

27.     Accordingly, by letter dated November 23, 2022, LMMC notified Defendant that it was in material breach of the Agreement.  Since that time, Defendant has failed to cure this material breach.

28.     To date, Defendant has failed to deliverer a working Solution compatible with LMMC's information systems as promised despite repeated notice and ample opportunity to cure.  To date, LMMC has been unable to use the Solution and has received no benefit from the Solution or Services.

**<u>FIRST CLAIM FOR RELIEF</u>**
**(Fraudulent Inducement)**

29.     LMMC incorporates the allegations set forth in the previous paragraphs of its Complaint as if fully set forth herein.

30.     Prior to entering into the Agreement, Defendant represented that the Solution was suitable for LMMC's business, fully compatible with common health care industry software platforms such as eCW, and compatible with LMMC's information systems.  Furthermore, Defendant represented that it was fully capable of providing the Services outlined in the Agreement.

31.     At the time Defendant made the foregoing representations, Defendant knew the representations were untrue.  In fact, the Solution was not suitable for LMMC's business, was

not compatible with common industry platforms such as eCW and was not compatible with LMMC's information systems. Defendant also knew that it lacked the technical capacity to perform the Services.

32. The representations made by Defendant formed a material part of the bargain and Defendant knowingly or recklessly made the foregoing representations to LMMC for the express purpose of inducing LMMC to enter into the Agreement.

33. LMMC reasonably relied upon the representations made by Defendant concerning the suitability and capabilities of Defendant and its Solution when it entered into the Agreement. But for Defendant's representations regarding its capabilities and the capabilities of the Solution, LMMC would not have entered into the Agreement.

34. As a result of the false representations made by Defendant, LMMC has and will continue to suffer damages. In addition to payments made to Defendant to date, LMMC has incurred additional costs and lost employee time during efforts to get the Solution to work.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract)

35. LMMC incorporates the allegations set forth in the previous paragraphs of its Complaint as if fully set forth herein.

36. Defendant materially breached the Agreement by failing to perform material obligations, including Defendant's failure to provide competent Services or deliver a working Solution, which deprived LMMC of any meaningful benefit of the bargain.

37. LMMC has complied with all conditions precedent to the enforcement of the Agreement.

38. LMMC has and will continue to suffer damages as a result of Defendant's breach.

WHEREFORE, LMMC prays that judgment be entered in its favor and against Defendant and the following relief be granted:

A.      Judgment in favor of LMMC declaring the Agreement terminated, void and without further effect;

B.      Judgment in favor of LMMC awarding compensatory damages in an amount to be determined at trial, but in an amount not less than $97,466.67;

C.      Prejudgment interest;

D.      Additional fees and expenses as permitted by law, including attorney fees and costs; and

E.      Any such further relief available at law or equity as the Court deems just and proper.

Dated this 15th day of February 2023.

KUTAK ROCK LLP,

By: s/ *Michael E. Brown*

Michael E. Brown
Meredith A. Webster, IL 6305145
michael.brown@kutakrock.com
meredith.webster@kutakrock.com
Two Pershing Square
2300 Main Street, Suite 800
Kansas City, MO  64108-2432
Telephone:   (816) 960-0090
Facsimile:    (816) 960-0041
*Attorneys for Plaintiff*