

## SaaS Order Form – Provider Solution

| Client Name: LMMC, LLC d/b/a/ Limitless Male | Proposed By: Frank D. Muscarello |
|---|---|
| Address: 601 N 108th Ct | Offer Valid Through: 6/30/2022 |
| City, State, Zip: Omaha, NE 68154 | |
| Country: US | |
| Client Contact: Eric Seitz | Client Billing Contact: Eric Seitz |
| Email: eseitz@limitlessmale.com | Email: eseitz@limitlessmale.com |
| Phone: 402-875-6631 **Ext.** 1009 | Phone: 402-875-6631 **Ext.** 1009 |

| Order Description | Order Start Date | Initial Term (in mos.) | Monthly Cost (in USD) | Exec/ Admin Users | Individual Users | # of Payments | Payment Due Upon Execution (in USD) | Total Fee (USD) |
|---|---|---|---|---|---|---|---|---|
| **Main Solution** Calcium Core Calcium App | 07/01/2022 | 36 | $12,700 MRR | 100 unlimited first 3 years | 15,000 unlimited for first 3 years | 6 | $38,100 | $457,200 |
| **Pathways** Calcium Studio | 07/01/2022 | - | $0 | - | - | - | - | |
| **Setup Fee** | 07/01/2022 | - | $50,000 | - | - | 1 | $40,000 | $40,000 |
| **Total** | | | | | | | $78,100 | $497,200 |

**Special Conditions**: Pathways will be private labeled as Limitless Male. LMMC will have the ability of adding Apollo at no additional cost to the platform and will be responsible for building all pathways as integrations are the same as Limitless Male. Any new integrations will be priced appropriately as an addendum.

Trillion will require a separate order form and addendum to be priced properly.

1st year - **$50,000, paid upon execution. Remaining 3 payments of $47,466.67  due quarterly (1st payment due 10-1-22)**
2nd year - **$76,200 paid on** anniversary date of the Order Start Date (2023) with the balance of $76,200 due on 10-01-2023
3rd year - **$152,400, paid on** anniversary date of the Order Start Date (2024)

4th year – MRR will not exceed $20,000 for agreement upon an additional 3-year contract

**Initial Service Term; Contract:** By signing below, you ("Client") agree to be bound by the terms of this "Order" and those "General Terms" attached hereto as Exhibit A (collectively, the "Agreement"). The initial term of the Agreement begins on the date this Order has been duly executed (the "Effective Date") and continues for the number of months set forth in the table above, unless terminated as permitted herein. Client shall have the right to terminate this Agreement upon thirty (30) days written notice to Calcium ("Client Termination"). Upon Client Termination, Client shall be obligated to pay the remaining months of the contract ("Termination Fee"). Except for the Termination Fee, Client shall have no further obligations to Calcium following such termination.

Upon expiration of the initial term, the Agreement will automatically renew for successive terms of equal length to the initial term, unless either party gives notice of non-renewal at least 60 days prior to the expiration of the then-current term. If this Order is executed and/or returned to Calcium by Client after the Order Start Date above, Calcium may adjust the Order Start Date, without adjusting the Total Fee above, based on the date Calcium activates the Solution and provided that the total term length does not change.

**Services:** Client will have access to the Calcium's main mobile applications and web-based software solution (the "Solution"), which includes the following products:

1. **Calcium Core**: Our primary platform that will allow you to manage your members, admins, and groups within your organization/practice. You can invite members to your pathways and monitor their progress.
2. **Calcium Studio**: Calcium's robust pathway creator and editor that will allow you to customize content for your company to engage your users.
3. **Calcium App**: Our user-facing application (available via the Apple APP store, Google Play store and online) that will allow you to deliver your pathways to your users.
4. **Third Party Data available with Calcium**: Calcium will connect directly with third-party applications to access additional data details to further support the customers use case:
    a. Connected Devices – examples: Apple Health, Fitbit, Withings Sleep Mat
    b. Scheduling – examples: TigerConnect, Mindbody, Twilio
    c. EHR/EMR Integrations – examples: EPIC, Cerner, Athena, DrChrono, Cerbo
5. **Integrations**:

**Total Users:** The fees are based upon the number of users that access the Solution within a given billing period (collectively, "Accessing Users"). The term Accessing Users includes both Individual Users and Admin Users. The Client will be initially billed based upon the number of Total Users listed in the table above. However, if, during any month during the Agreement, Client's number of Accessing Users exceeds the number of Total Users (each such excess user, an "Excess User"), then for each such month, Client will be responsible for paying the per user month fee in the table above for each Excess User. Such payment shall be Calcium's sole and exclusive remedy in the event that the number of Accessing Users exceeds the number of Total Users and will be added to the monthly recurring revenue billed by Calcium to client.

**Calcium Billing Contact:**

Email: **accounting@calciumhealth.com**

**THIS AGREEMENT** has been duly executed by authorized representatives of the parties, in duplicate original, either of which may be deemed the original, but together constituting one agreement, and each party receiving one fully completed and executed duplicate.

| | |
|---|---|
| **LMMC, LLC** <br> By: _Eric Seitz_ (DocuSigned) <br> Signature <br> Name: Eric Seitz <br> Title: Chief Operating Officer <br> Date Signed: 6/30/2022 | **Calcium LLC** <br> By: _Frank Muscarello_ (DocuSigned) <br> Signature <br> Name: Frank Muscarello <br> Title: Managing Partner - Sales <br> Date Signed: 6/30/2022 |

**EXHIBIT A**
**General Terms**

**Use of the Solution.** As part of the applicable Solution subscribed to by Client (as further described on the Order to which this Exhibit A is attached), Calcium hereby grants Client, for the term of this Agreement, a non-exclusive, non-transferable, non-sublicensable right to access and use the applicable Solution in accordance with the terms and conditions of this Agreement, solely for Client's internal use by Client's authorized users and employees (each, a "User," and collectively, "Users"). For purposes of this Agreement, the term "Client" shall include all entities that control, are controlled by, or are under common control with Client as identified above.

**Restrictions.** The Solution shall not be used for any purpose other than as expressly authorized by this Agreement. In particular, but without limitation, Client agrees that it will not (a) use the Solution for purposes of benchmarking or reverse-engineering; (b) compromise the integrity or performance of the Solution or of any system, network or data used to operate the Solution; (c) circumvent, disable or disrupt any technical measures that Calcium uses to administer, protect, or operate the Solution; (d) develop a software application product or service based upon the Solution or any part thereof that provides equivalent features and functionality as the Solution; or (e) use the Solution for any purpose that is deceptive, fraudulent, obscene, defamatory, threatening, harassing, tortious or unlawful. Nothing in this Agreement shall be deemed to grant Client, either directly or by implication, estoppel, or otherwise, any license or rights other than those expressly granted in this Agreement. Client does not acquire any other rights or ownership interests. Calcium reserves all rights not expressly granted to Client under this Agreement.

If Client is an agency of the U.S. Federal government (the "Government"), or a prime contractor or subcontractor (at any tier) under any contract, grant, cooperative agreement or other arrangement with the Government, Client hereby acknowledges that the software included in any Solution ("Software") and any related technical data or documentation ("Documentation") shall be deemed to be "commercial computer software" pursuant to FAR Section 12.212, DFAR Section 227.7202, or such other acquisition regulations as may be applicable to this procurement. Any use, modification, reproduction, release, performance, display, disclosure or transfer of the Software, the Documentation or technical data shall be governed solely by the terms of this Agreement and shall be prohibited except to the extent expressly permitted by this Agreement.

Client acknowledges that Calcium will condition each User's access to the Solution upon such User agreeing to the terms and conditions governing the use of the Solution (the "User Agreement"), including Calcium's privacy policy (the "Privacy Policy"). The User Agreement may be amended, from time to time, by prior written notice to Client and the Users. Calcium reserves the right to suspend or terminate any access to the Solution in the event that Calcium reasonably believes that Client violated the terms of this Agreement or of any applicable laws or regulations.. Notwithstanding the foregoing, Calcium shall use commercially reasonable efforts to notify Client in advance of any such suspension or termination and provide Client with a reasonable opportunity to resolve any alleged violation prior to such suspension or termination. In no event shall any provision of the User Agreement be deemed to abrogate any of Client's obligations under this Agreement, and Client shall remain directly liable to Calcium for any acts or omissions of its Users. Client shall immediately notify Calcium of any actual or suspected compromise of any credential used to access the Solution or any other potential unauthorized access to the Solution and shall provide Calcium with all reasonable cooperation to mitigate such unauthorized access.

**Payment.** Client shall pay Calcium the fees set forth in the Order (the "Fees"). If the initial term of the Agreement is less than one year, then Client shall pay its required fee monthly on or before the fifth day of each month, except for the first payment, which shall be due upon execution of the Order. If the initial term of the Agreement is one year or more, then Client shall pay its required fee upon execution for the first year and on the anniversary date of the Order Start Date for each year thereafter, unless Calcium agrees to receive payment in monthly installments, in which case, Client shall pay in the same manner as if the initial term was less than one year. Any Setup Fee shall be due upon execution of the

Order. All Fees and other amounts payable by Client under this Agreement are exclusive of taxes and similar assessments. Client is responsible for all sales, use, lease, personal property and excise taxes, and any other similar taxes, duties and charges of any kind imposed by any federal, state or local governmental or regulatory authority on any amounts payable by Client hereunder, other than any taxes imposed on Calcium's income. If Calcium is obligated to collect and remit any such taxes, then Calcium shall add the appropriate amount to Client's invoices as a separate line item.

**Confidentiality.** The party receiving (the "Recipient") Confidential Information (as defined below) shall, by all appropriate means, protect the confidentiality of the Confidential Information of the other party (the "Discloser"); but in no event shall the Recipient use a lesser standard of care with respect to Confidential Information than it does with respect to Recipient's own most sensitive confidential information. Recipient shall hold the Confidential Information of Discloser in trust and confidence and shall not copy Discloser's Confidential Information or disclose such information to third parties. Recipient shall not use the Discloser's Confidential Information for any purpose other than the performance of its duties under this Agreement. Recipient shall cooperate with Discloser in investigating and resolving any suspected breach of confidentiality. Recipient may disclose Discloser's Confidential Information, on a need-to-know basis, to Recipient's auditors, attorneys or governmental authorities exercising a supervisory, examination or regulatory function in relation to Recipient. All Confidential Information shall be returned by the Recipient to the Discloser when it is no longer needed or at the termination of this Agreement, whichever comes first. The parties' confidentiality obligations shall survive the termination of this Agreement. The term "Confidential Information" means any information that (i) is not generally known or available to others in the trade, or (ii) the disclosing party designates in writing as confidential. Calcium hereby designates the terms and conditions of this Agreement, the Solution, the Software, the Documentation and any other information disclosed in the course of providing the Solution as Confidential Information. The parties' confidentiality obligations shall not apply to information which (i) is rightfully in the possession of the Recipient prior to the disclosure by the Discloser, (ii) becomes known to the general public through no act or omission of the Recipient, (iii) is lawfully disclosed to the Recipient by a third party, or (iv) the Recipient develops independently without use of any Confidential Information. If Recipient is required by a court or governmental agency to disclose Confidential Information of Discloser, Recipient shall immediately inform Discloser in writing of the order or request for such disclosure and shall take commercially reasonable steps to maintain confidentiality of the Confidential Information.

**Calcium IP Rights.** All right, title and interest in and to the Calcium Materials, including any and all intellectual property rights therein, are and will remain with Calcium and all right, title and interest in and to any third-party materials will remain with the respective rights holders in such third-party materials. Client has no right, license or authorization with respect to any of the Calcium Materials or third-party materials except as expressly set forth in this Agreement or third-party license. All other rights in and to the Calcium Materials and third-party materials are expressly reserved by Calcium and the respective third-party licensors. Calcium shall own and be entitled to prepare, retain and utilize an aggregated dataset that is derived from data generated by use of the Solution by Client but is stripped of any personally identifiable information and any Confidential Information of Client (the "Enhanced Anonymized Data"). Calcium may use the Enhanced Anonymized Data for any lawful purpose. For the purposes of this Agreement, the term "Calcium Materials" means the Solution and any and all other information, data, documents, materials, works and other content, devices, methods, processes, hardware, software and other technologies and inventions, including any deliverables, technical or functional descriptions, requirements, plans or reports, that are provided or used by Calcium in connection with the Solution or otherwise comprise or relate to the Solution, including, without limitation, any intellectual property created in connection with Client's or any User's use of the Solution.

**Client's Data Rights.** As between the parties, Client shall be deemed to own all Client Data. Client hereby grants Calcium a non-exclusive, non-sublicensable, limited, royalty-free license to use, modify, reproduce, and distribute Client Data solely for purposes of performing its obligations and exercising its rights under this Agreement. For the avoidance of doubt, the foregoing shall not apply to Enhanced Anonymized Data. For the purposes of this Agreement, the term "Client Data" means data provided to Calcium by Client under this Agreement, except Enhanced Anonymized Data.

**Calcium Indemnity**. Calcium shall indemnify, defend and hold harmless Client and its affiliates, and each of its and their respective officers, directors, managers, employees, agents, successors and assigns (each, a "Client Indemnitee") from and against any and all losses, damages and liabilities ("Losses") incurred by such Client Indemnitee arising out of or relating to any , action and other claim ("Action") by a third party (other than a Client Indemnitee) that arise out of or relate to: (i) Calcium's breach of any of its representations, warranties, covenants or obligations under this Agreement; (ii) any allegation in such Action that Client's use of the Solution in compliance with this Agreement infringes on a third party's intellectual property rights; or (iii) gross negligence or more culpable act or omission (including recklessness or willful misconduct) by Calcium or its personnel or agents. The foregoing indemnification obligation of Calcium shall not apply to any Action or Losses that are caused solely by Client's material breach of this Agreement or Client's gross negligence or more culpable act or omission.

**Client Indemnity**. Client shall indemnify, defend and hold harmless Calcium and its affiliates, and each of its and their respective officers, directors, managers, employees, agents, successors and assigns (each, a "Calcium Indemnitee") from and against any and all Losses incurred by such Calcium Indemnitee in connection with any Action by a third party (other than a Calcium Indemnitee) that arise out of or relate to: (i)

Client's breach of any of its representations, warranties, covenants or obligations under this Agreement; (ii) Calcium's use of any materials, information, documents, data, specifications, software, content or technology provided by or on behalf of Client or any User to Calcium, including, without limitation, that such use violates or infringes on a third party's intellectual property rights; or (iii) gross negligence or more culpable act or omission (including recklessness or willful misconduct) by Client or its personnel or agents or any User(s).

**Indemnity Procedure**. Each party shall promptly notify the other party in writing of any Action for which such party believes it is entitled to be indemnified pursuant to this Agreement. The party seeking indemnification (the "Indemnitee") shall cooperate with the other party (the "Indemnitor") at the Indemnitor's sole cost and expense. The Indemnitor shall immediately take control of the defense and investigation of such Action and shall employ counsel reasonably acceptable to the Indemnitee to handle and defend the same, at the Indemnitor's sole cost and expense. The Indemnitee's failure to perform any obligations under this paragraph will not relieve the Indemnitor of its indemnification obligations except to the extent that the Indemnitor can demonstrate that it has been materially prejudiced as a result of such failure. The Indemnitee may participate in and observe the proceedings at its own cost and expense with counsel of its own choosing.

If any of the Solution is, or in Calcium's opinion are likely to be, claimed to infringe, misappropriate or otherwise violate any third-party intellectual property right, or if Client's or any User's use of the Solution is enjoined or threatened to be enjoined, Calcium may, at its option and sole cost and expense: (a) obtain the right for Client to continue to use the Solution materially as contemplated by the Order; (b) modify or replace the Solution, in whole or in part, to seek to make the Solution (as so modified or replaced) non-infringing, while providing materially equivalent features and functionality, in which case such modifications or replacements will constitute the Solution under the Order; or (c) by written notice to Client, terminate this Agreement with respect to all or part of the Solution, and require Client to immediately cease any use of the Solution or any specified part or feature thereof.

**Warranties.** CALCIUM REPRESENTS AND WARRANTS THAT THE SOLUTION AND THE UNDERLYING SOFTWARE SHALL OPERATE IN ALL MATERIAL RESPECTS WITH ANY APPLICABLE DOCUMENTATION AND ALL SERVICES SHALL BE PERFORMED IN A PROFESSIONAL AND WORKMANLIKE MANNER. EXCEPT FOR THE FOREGOING WARRANTY, THE SOLUTION, THE UNDERLYING SOFTWARE AND ALL RELATED DOCUMENTATION, MATERIALS AND SERVICES ARE BEING "AS IS" AND CALCIUM HEREBY DISCLAIMS ALL OTHER WARRANTIES, WHETHER EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, NON-INFRINGEMENT, OR ARISING FROM COURSE OF DEALING, USAGE OR TRADE PRACTICE.

**Limitation of Liability.** IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR SPECIAL, INCIDENTAL, CONSEQUENTIAL, PUNITIVE, EXEMPLARY OR TORT DAMAGES (INCLUDING, WITHOUT LIMITATION, ANY DAMAGES RESULTING FROM LOSS OF USE, LOSS OF DATA, LOSS OF PROFITS OR LOSS OF BUSINESS) ARISING OUT OF OR IN CONNECTION WITH THE SOLUTION, THE UNDERLYING SOFTWARE AND ALL RELATED DOCUMENTATION, MATERIALS AND SERVICES OR THIS AGREEMENT, WHETHER OR NOT SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE LIMITATIONS IN THIS PARAGRAPH DO NOT APPLY TO ANY BREACH OF THE PARAGRAPHS ABOVE WITH THE HEADING "CONFIDENTIALITY" AND "INDEMNITY".

**Miscellaneous**. This Agreement, along with the Order, contains the entire agreement of the Parties with respect to the subject matter hereof and supersedes all prior understandings or agreements with respect to such subject matter. This Agreement may be modified only by a writing that is duly executed by both parties. This Agreement is to be governed by, construed and enforced according to the laws of the State of Illinois. The parties agree that all disputes and proceedings in connection with this Agreement shall be heard exclusively by state and federal courts located in the City of Chicago, Illinois. Neither Party may assign this Agreement without the prior written consent of the other Party. This Agreement shall be binding upon and inure to the benefit of the parties and their respective administrators, successors and assigns. Headings used in this Agreement are provided for convenience only and shall not be used to construe meaning or intent. The parties desire that this Agreement be construed fairly, according to their terms, in plain English, without constructive presumptions against the drafting party. The Agreement may be executed by electronic means and in counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument. If any provision or part of a provision in this Agreement is held to be illegal, invalid, or unenforceable, then the remainder of the provision will be enforced so as to effect the intention of the parties, and the validity and enforceability of all other provisions in this Agreement will not be affected or impaired. The Parties acknowledge and agree that they are dealing with each other as independent contractors, and nothing in this Agreement may be construed as creating or constituting an employee-employer relationship, a partnership, a joint venture, a franchise, or an agency relationship. Neither Party may bind the other Party without a signed written consent from such other Party, and employees and agents of one Party are not for any purpose employees or agents of the other. This Agreement is made for the benefit of Calcium and Client only, and the Agreement is not for the benefit of, and was not created for the benefit of, any third parties. All notices, requests and other communications called for by this Agreement must be deemed to have been given immediately if made by email to the other party at the addresses set forth below or to such other addresses as either party may specify to the other in writing. Notice by any other means will be deemed made when actually received by the party to which notice is provided. The Agreement can be terminated by either Party

upon material breach by the other Party, provided, the non-breaching Party shall provide the Party in breach with written notice of the alleged breach and no less than thirty (30) days to cure such breach.